Well, we lost our audience, huh? I will call the next matter is U.S. v. Jean-Claude Marie Ravin. That's submitted. And then Blake Blather v. U.S. District Court to the District of Montana. That's submitted. And now we come to U.S. v. Seth Merkey. All right? Good morning. May it please the Court, my name is Lyle Tenpenny and I represent the appellant Seth Merke. And I would like to reserve five minutes for rebuttal. This case is about an improper and overbroad conspiracy charge. Why was it improper? Because the government charged an overbroad conspiracy that it could not prove at trial and it did so for one reason only, so that it could pile on evidence that could be attributed to my client under the laws governing conspiracies. The result was that we had to defend against co-conspirator statements and other evidence that had no relationship or nothing to do with Mr. Merke. This rendered the trial unfair and it was an entirely avoidable result. But there is a check on the government's ability to charge broad conspiracies. It's required to prove that broad conspiracy. And if it doesn't, the instructions, the circuit instructions require that a not guilty verdict be returned. And that's the way the jury was instructed. But don't the case, it says that and I give that same instruction, but don't the cases then say if the jury finds him guilty, we have to ask if there was a variance, whether the variance was prejudicial. We don't, have you found any case where the Court of Appeals or the Supreme Court says, look, they charged this very, very broad conspiracy, they proved the person was guilty of some other conspiracy and therefore he was entitled to a judgment of acquittal and we so order it. Did you ever find? The Brown decision of this circuit and this circuit is one such decision. And what's clear in a lot of the cases where there's the prejudicial variance is the issue. It's not clear that the instruction that we're talking about was given. And there's a number of decisions cited in the government's brief. It's not clear that engage in that analysis. It's not clear that that instruction was given. In this case, the jury was instructed either he's guilty of this, of being a member of this conspiracy or else he's not guilty at all. And the Brown court said that's a critical fact of no little importance. Because the issue is sufficiency of the evidence. Did the government prove his membership in this conspiracy? The analysis is not, was there insufficient evidence, so let's go, let's determine then, therefore, if the insufficiency is harmless. Because that's really what the prejudicial variance issue is about, was the variance. Doesn't a Berger case in the Supreme Court say you have to engage in that kind of analysis? Well, again, I think the issue, when the jury is instructed, the way it was instructed in this case, I think this circuit's law is quite clear that it's a sufficiency of the evidence issue. But there's not a case that's so held. I mean, certainly Brown focused on that issue, but there isn't a case that held like Judge Moskowitz was saying, that you don't look at the variance. I thought Duran was pretty clear that we do have to look at whether there's a variance between the indictment and what was proven. How do we distinguish Duran case? Well, there's no evidence in the Duran case that this instruction was given. Generally, I think in those cases, there's an instruction, there just isn't an instruction that says you either find that this conspiracy existed or else, or else that you Is there a case that says when this instruction is given, then you don't look for whether there's a fatal variance or not? I mean, I'm just not aware of any case that holds that's exactly on point. It's not clear if – I don't recall if Brown makes that point expressly, but the Brown court made very clear that was a critical fact, because the jury's verdict is either supported by sufficient evidence or it isn't, because that was the instruction that was given. Now, the government was required to prove Merck's membership in this conspiracy, and it had to offer proof that he had reason to know of an overall conspiracy and that he had reason to believe that whatever benefits he received were dependent on the success of the entire venture. What was the direct evidence that it presented, that the government presented? Well, it called its key witness, Robert Davies. Robert Davies was also an alleged spoke in this conspiracy. Robert Davies testified about his conduct within the Wins, his dealings with them, how he was recruited by them, and how he sold them stolen parts. And all of that evidence was then attributed to Mr. Merck under the laws governing conspiracies. But then Mr. Davies testified that he had never heard of Mr. Merck, had no reason to believe that Mr. Merck existed, didn't care whether other people existed in dealing with the Wins, and didn't believe that his – whatever benefits he received were dependent on the presence or the contributions of people like Mr. Merck. He responded, absolutely, when asked, would you receive your benefits, whether or not Mr. Merck was involved? He said yes. If we assume for the moment that there was no rumor, the government didn't succeed in proving the rumor, and if we assume that Durand says we have to look as to whether there is a fatal variance between the indictment and the proof, why were his – why was there an impact on the defendant's substantial rights? Now, wasn't there already fairly persuasive evidence of his – his involvement? I think he conceded his involvement in at least the individual conspiracy with the Wins. Well, that raises an important point, because Mr. Merck in part conceded his involvement, because he knew he was facing a trial where someone like Robert Davies was going to testify and was going to provide direct insight into his dealings with the Wins, and he would therefore know that the jury is going to hear, well, this – because the government even told the jury, Davies is just like Mr. Merck. You can basically – whatever Davies says is exactly the arrangement that Mr. Merck had with the Wins. And so by charging this broad conspiracy, they're able to get in Mr. Davies, and then incredibly, in the government's brief, they effectively argue that – or effectively concede that Mr. Davies is not a member of this conspiracy. It effectively says, you know what, he didn't know. There was this overall conspiracy. And yet the government used – that was a key part of its case, was the introduction of this testimony of a co-conspirator who, it turned out, wasn't a co-conspirator. And that raises the evils, potential evils, of charging these broad conspiracies. But how specifically did that affect him, the spillover evidence issue? And, you know, we reviewed your brief, so I understand your arguments. But given the overwhelming evidence of Merck's participation, the ability to compartmentalize the evidence, which are the factors Duran told us to look at, what really affected Merck's rights because the government charged this single conspiracy? Well, it certainly affected the way we had to approach the case, because Davies' testimony was critical in that it – in that it undercut our ability to show that the Wins didn't know that this was stolen – equipped – you know, stolen property. And it – you know, in a trial where Mr. Davies isn't present, you can chip away at the government's case, which was otherwise going to be built on – on circumstantial evidence, these material transfer forms that you probably read about in the briefs and the testimony of people at Phillips that talked about missing medical equipment. But key to the government's case was establishing that that was – that the Wins were presiding over the scheme to obtain these parts, and that was directly imputed to Mr. Merck's involvement. Now, I understand Your Honor's concern. I mean, there certainly was a lot of evidence asked to Mr. Merck, and we won't – we won't know in the hypothetical trial that you're – that you're contemplating what the result would have been. But again, it goes back to there has to be some limits on the government's ability to charge these broad conspiracies. It knew before it charged the case that Mr. Davies didn't know anything about Mr. Merck and wasn't a member of the same conspiracy as Mr. Merck. It – it knew that – and it – and yet it proceeded to charge the case that way to confer a strategic advantage on itself. And we think that's why there is a jury instruction that says you've got to prove – government, you've got to prove this conspiracy or else the defendant is not guilty. That's the principle that underlies that instruction. It's a check on the government and says you've got to be careful when you're charging these conspiracies or you – or you risk a situation that we have here where it just – it just throws it all into one pot and then it says to the jury, well, it looks like he did something, it looks like he was a member of some conspiracy, whether or not it was this five-year conspiracy we charged that involved a number of different suppliers and spanned three years after he – he withdrew from the conspiracy. I mean, that's another – I mean, it's another key point is that the government knew – the government agent who investigated the case said he left this part of a five-year conspiracy that extended for three years past when the government agent said he was no longer part of this conspiracy. But most critical about the government agent's testimony was that she said there was no evidence that he had any reason to believe there were others involved. Is there any doubt that he conspired with the Wins? I mean, there's no – there's not even a single doubt about it, that there was a conspiracy. The Wins were buying these stolen sonogram heads and he was selling – supplying them. What – your theory is that although he conspired with the Wins, he didn't know about the other people who were also conspiring with the Wins. That's correct. So there's absolutely – I mean, we could all go about our business being convinced beyond any shadow, beyond any – it's almost scientific that your client was involved in a conspiracy with the Wins to transport into state commerce stolen sonogram heads. True? There – we don't – we don't – we did concede that trial. So is it – so the Wins were involved in a conspiracy and the Wins had different suppliers. And so what you're saying is because your client didn't know about the other suppliers, he's not guilty of the conspiracy. And so you're interpreting the jury's instruction to say if they prove a different conspiracy, then you have to find him not guilty. I give that instruction whenever I have conspiracy cases. And doesn't that instruction mean that if, when the evidence is presented, you find that he conspired with other people or with the same people to do something else, but not the conspiracy that's in the indictment, you have to acquit him? Not that if you find that he was – he had a separate conspiracy with the Wins and Davey's had a separate conspiracy with the Wins, he gets off. I don't think that's what the instruction means. I think the instruction means, look, if in presenting all this evidence you find that he was laundering money and they conspired to launder money, that's a different conspiracy and you can't find him guilty because that's not the indictment. The indictment charges one conspiracy. Your argument is that there really were multiple conspiracies, that each supplier who didn't know about the other supplier was a separate conspirator. That's what your argument is. Well, it is, but I would respectfully disagree with one point that you made. The case law is quite clear, and one of the other instructions that was given was what does it mean to be a knowing participant? What does it mean to be a member of a particular conspiracy? And so the government is required to prove that Mr. Merck was aware of these other suppliers. That was – that's part of the burden that the government bears. Well, not that he was aware of the other suppliers. At a minimum, they have to prove that he knew that there were others, that he wasn't alone. And not only that he wasn't alone, but and that he thought he was a part of an interdependent scheme. It's not just that he was aware. Mr. Merck may very well – and I don't – there's no evidence related to this. He may have suspected, well, yeah, the Wins are doing this to me. They may be doing it with others. That might – there may be some reason to believe that he suspected that. But his awareness of these other people is not enough. The test is, it's rooted in the case law. It's in the instruction. The government also has to show that he thought he was in the same scheme, that whatever benefits he received was dependent on their contribution at least in part. I understand that. But don't we come back to – and this is the language of Duran, which came nine years after Brown. They say, and I'm quoting, a variance warrants reversal only if it affects the substantial rights of the parties. A defendant's – and I'll skip the cites. A defendant's substantial rights may be prejudiced to be exposed to evidentiary spillover and then it deals with spillover. But the statement is a variance warrants reversal only if it affects the substantial rights of the parties. And you're saying that if the district judge gives the instruction, the pattern instruction, that if you find that he's guilty of another conspiracy but not the one charged in the indictment, you must find him not guilty, that essentially what we have to do is put ourselves in the position of the district judge at the time of the Rule 29 motion. And we say the district judge should have granted it, is what you're saying. That's correct. I mean, I don't think you'll see in Duran that there was any instruction similar to the one given here. So I think – I'm willing to bet that there was. I've been doing this for a long time. And district judges, they love that manual. And that instruction's been in the manual at least since I've been in the Ninth Circuit. I mean, at least since I've been practicing or judging in the Ninth Circuit, which goes back to 85. It's been there a long time. But, yeah, I think the other point is that the issue in Duran was whether they had charged a single – charged a single conspiracy as opposed to multiple conspiracies. And certainly that's one of the arguments we make, but it's not the primary argument that we make. The issue in Duran was did the – did the defendants have – you know, it's more of a notice issue. Did you know that they were going to charge this kind of conspiracy or this single conspiracy, and then did it show that there were, in fact, these discrete conspiracies? Now, again, I submit that because the instruction that we were given, we don't know about Duran. You may be correct that it was given. But I think, you know, that distinguishes it based simply on the instruction. But the question really here goes more to membership. Was Mr. Merck a member, and was there sufficient evidence to support the jury's finding of his being a member of this conspiracy? Well, he certainly was a member of Conspiracy of the Winds. But that's not the conspiracy that was charged. Well, because they charged that there were other people that were a member of that conspiracy. You have to – I mean, it's important to understand that the government charged a very specific – I know. Having drafted those indictments in previous life, I know. The government charged a very specific kind of conspiracy. Right. It's what I call the press release part of the indictment. Right. Well, and it was one that certainly extended beyond Mr. Merck's scope. To charge him as being a member of that conspiracy, it had to prove certain things that it simply failed to prove. Its key witnesses undercut – What do you think they had to prove? They had to prove that Mr. Merck had reason to know there were others involved. It hasn't shown that. There's no evidence of that. I mean, the government will probably stand up today and speculate and draw a bunch of inferences, but the government offered no evidence that he was aware of others involved. Well, he sold stolen property, right? And should he have known that his property would then move on to a third party or that there were other suppliers? But this – well, there's two responses to that. I mean, this is just like – I mean, Judge Lasnik at the district court in arguments on these motions, you know, made an apt analogy. This is just like a common fence. It could be a jewelry store here in downtown Seattle. It's known to be willing to fence property. Burglar 1 goes and sells it, stolen jewelry. Burglar 2, the next week, does the same thing. Are those two burglars members of the same conspiracy? What about the REM? Does that show? Well, that's the issue. What is the REM? Because the analogy that Judge Lasnik made is the same situation we have here. We have a common fence. But they're selling it. Another key point is that CMS was selling this in the course – in the regular course of business. The people who were buying it – this isn't a drug chain conspiracy where the person who buys it necessarily knows it came from some illicit source. CMS was just selling it in the course of commerce. And it wasn't – while it certainly was a purveyor of stolen property in part, it wasn't – there's no evidence that that was all it did. I mean, it was a business that had a storefront in Bothell and it was selling stolen – or selling medical equipment. Some of it stolen, some of it not. But that is – that's a key point because it shows the nature of the scheme was such that they could deal with these various folks. And these folks had no reason to know of each other. It's just like – it's just like an example that I gave. Well, that – actually, I think the example's worse for it. Because in the example you gave, the fence – the person who's going to bring the stolen goods to the fence knows that the fence is involved in fencing. And if you're going to be the only person giving things to the fence, the fence is not going to have the reputation. It's not going to have the ability to fence. It's like the drug cases where the court – where the Ninth Circuit has said that. They knew that to be a large-scale dealer in drugs, they have to have other people supplying. But I think that's not – Your case is better than mine. Well, it may be better. Hopefully, I haven't shot myself in the foot by using a bad example. But I think part of the, you know, point of that example is that if this is a – if this is a jewelry store in downtown Seattle, the point is that the fence is going to get paid regardless of its reputation, regardless of whether there are others involved. I still come back to one thing. And the other side's going to need to address this, too. I see – I see what you're saying. But the Brown case doesn't talk about variance. I mean, they just don't deal with it at all. But all the other cases do. And our most recent jurisprudence says that if there's a variance – and I understand your argument that there is – but if there's a variance, we still then have to go to whether it affected substantial rights. And you're saying, no, we don't have to do that because you gave this instruction. Certainly, that's my primary argument. Is there any case anywhere in any circuit that said if you give that instruction, the Court of Appeals has to put themselves in the position of essentially the district judge at the Rule 29 conference and say, not the same conspiracy. Therefore, judgment of acquittal. Your Honor, I'm not aware of another case other than – Brown is certainly the best example in this circuit. I would just note for you – and I'm running out of time, and I want to make sure I have some time on rebuttal – but I will just note quickly that certainly the district court decision out of Massachusetts that we cite, it's the Papathanasi case. Obviously, that's not binding on this Court. But that was – that case is on all fours with this case. That was a situation where you had several – it was a hub-and-spokes conspiracy. The district court said, government, you threw all these people in the same conspiracy, but you didn't prove any sort of rim. These are people just acting in parallel to each other. I have to grant a motion for – I have to grant the motion for judgment of acquittal. You haven't proven a single conspiracy. There was no question – that was after the trial. There was no question of variance or any other questions. It was a question of sufficiency of the evidence, and that's what this case is about. The government didn't prove it. The conviction for count one should be reversed. Thank you. Good morning. May it please the Court. I'm Susan Lloyds. I'm an assistant United States attorney in the Western District of Washington. Well, were you a trial lawyer here? I was one of the trial attorneys, yes, Your Honor. Well, could you diagram this for me? Show me the rim. Well, if you want to analyze it as a hub and spoke, clearly the main players in the conspiracy were Columbia Medical Systems at the center. There's no question that Sesmerk was involved with them during the period up until he withdrew. And, in fact, the evidence establishes that he was involved from very early on in that conspiracy and was clearly a major player. If you want me to address the question of the hub and spoke... Well, I'll tell you my experience. Yes. I presided over a drug conspiracy case that went on for a long time with bodyguards and everything else, see? And I let the U.S. attorney... I wanted him at first to... I told him, I said, Well, you need to show me the conspiracy first before I'll let you introduce this other evidence because, you know, a statement of a co-conspirator comes in that can affect all of them. So he said, Well, I'll tie it up, Judge. I'll tie it up. And I knew this prosecutor. He was a nice guy. And I've had cases with him before. So we went through this long trial, huh? And then I said, All right, now diagram it for me. He got up there and he put the hub in there, put out some spokes, couldn't tie anything together. Couldn't tie one of them together. Well, Your Honor, in this case... Tie them together for me because I wasted, oh, probably two months on that. And no one was convicted because of it. Your Honor, in the Martin case, the Court recognizes that was analyzed as a hub-and-spoke conspiracy. Is this a hub-and-spoke conspiracy? Well, let's just assume it is for purposes of this question because I know that's a... Did you diagram this case? Well, clearly the... Let me ask you, have you ever diagrammed this case? I don't think it's that difficult to diagram. But have you ever done it? I would say no. No. You know, Steve Trott, who's one of our judges, he's a great prosecutor. As a matter of fact, the first trial he ever had in his life was before me when I was a Municipal Court Judge in Van Nuys. And he was just starting out in the DA's office. And his policy was always to diagram these cases and you could just see where you were and who was involved. You didn't diagram this? Well, I did not, Your Honor. But I can, I think, answer the question that I think you're asking, which is... I want to know where the rim is. All right. The law, the case law in this circuit with respect to conspiracies like this follows the same key principles that apply in other conspiracy cases. You don't have to know all the players. So it isn't... I know you don't have to know all the players, but you've got to tie them in. Correct. And I can go right to that issue, Your Honor, if you would like me to, which is the two issues, I think, that come up in the multiple conspiracy and single conspiracy. And that is, did he have reason to know of the scope of the conspiracy? And did he have reason to know that he benefited from the overall actions in the conspiracy? And if you'd like me to, I can address that issue. In terms of the benefits, it's not a transaction-by-transaction analysis. The fact that Mr. Merck may not have gotten some of the direct results of the proceeds from the sale of the probes that Mr. Davies sold to CMS isn't really the question. The question is, did he benefit from what happened in the conspiracy? It's an overall picture. But since CMS was also, I guess, doing legitimate business, why is there a necessary inference that CMS was not just getting stolen goods and selling stolen goods from Merck? I know that's an argument that the government makes and it's brief, but it didn't make sense to me given that CMS was also legitimately selling non-stolen goods. Well, there was other evidence that they were involved in soliciting other people to join their conspiracy. Why would Merck be assumed, the defendant be assumed to know about it? Well, let's look at the specific evidence of what Mr. Merck knew. And I will point first to the FedEx records, which the defense in this case tried very hard to keep out. They argue in their reply brief that it has no materiality, no evidential value to this case. But they fought hard to keep it out. And I can give you the cite to the docket of that, those arguments. But they're in. But it was to his, a relative of the Wins and to his brother, I guess, or to another person named Mr. Merck. And other people that Columbia Medical Systems asked him to send product to. Who else, besides those two? I believe there were other customers of CMS that he sent things to. Do you have cites to that? I didn't see that in the record. I'm not sure. We put in the FedEx. If they're not in the FedEx records that we submitted, then I would withdraw that argument. But I will focus on the nail salon. Because that, to me, is a key thing. Let me just ask, I just, you know, this is, Judge Moskowitz gets passionate about these conspiracies. And I, I mean, I had, how long have you, how long have you been a trial judge? As a district judge, almost 12 years. 12 years. I had more than 12 years. 12 years in one day. But if I give you a piece of paper that said, diagram this conspiracy for me with the evidence that was in, could you do that? Well, I can tell you what the evidence was. Could you do that? If I gave you this, and you're Steve Trott, and I said, there's a board, here's a big piece of paper, go diagram it for me. Could you do that? Well, I think the diagram would probably be Columbia Medical Systems at the center. Well, I'll give you, I'll give you a piece of paper if you can diagram it for me. You're really not going to do that? No, I'm serious about that, yeah. I really am. Well, there is, clearly, do you want me to go back here? Any place you want. You can come up here and sit down if you like. There clearly is Columbia Medical Systems at the center. Right. Mr. Merck was a major, and I'm going to give him a big circle, because he was a major supplier, and I think that's important here. Was he a spoke? Whether he was a spoke or a strand, I'm not sure that that analysis is all that important to the questions that are before this court, which is whether he knew or had reason to know of the scope. The FedEx records is certainly one piece of evidence to a nail salon. Now, why is ultrasound equipment going to a nail salon unless somebody is trying to cover something up? Isn't all that related to his, Merck's, sales? Merck sold a bunch of these things and, of course, they're going to try to camouflage the true nature of them, and all those things, the FedEx records, go to his sales. They don't really show that there's anybody else selling. In other words, there's no evidence that says send it to the nail salon. That's where we're sending all these. Well, that's true. That's true. But the question is whether there are reasonable inferences that he knew that others were involved. Could I ask you this? Put aside sonograms for a moment and let's kick it over to drugs. Let's say the Wins in Columbia were the big-time drug distributors. You have Merck. He delivers to them one kilogram of cocaine. Then you have the Davies. He delivers a ton of cocaine   responsible for the one ton of cocaine? Well, I think it depends on the evidence. What Merck said was that he was responsible for the one ton of cocaine. Take everything you have here and just substitute cocaine for sonograms. Is Merck responsible for the one ton of cocaine? The mandatory minimums, the guidelines, all that. I think there is a question of whether or not it's fair to involve somebody and to consider them to be part of a bigger conspiracy based on their reason to know. The smaller the player in the conspiracy, the less the evidence is and the less the inferences are that they have reason to know. Here, Mr. Merck was involved for two years. He was clearly close to the Nguyen's. He knew them from before. He met with them clearly on many occasions as evidenced by the fact that he was being paid in cash. Forty-six different times he deposits cash into his account. It is a reasonable inference that he asked about the scope of the conspiracy, that he would be concerned about that, that he would be concerned about what else is happening in the conspiracy and the precautions were being taken to be so that they would not get caught. Why would he ask? He's just selling this stuff that's stolen and he gets his money. Well, he's interested in not getting caught. It's clear that he had to have, I think the inference is clear, that he had to have made sure that he would not get caught. He's not just like a person who breaks into a house and takes his stolen equipment to a fence. He works at the company where the equipment is coming from. He has to understand that he's not going to get caught. He has to have an interest in the serial numbers in this case. The inference is certainly reasonable that he wanted to make sure that other people were taking care of making sure that things were not going to get unraveled. And when did he leave? He left when that plan started to come apart. When probes came back to Phillips where he knew it was going to be tied to him. So clearly for that two-year period of time, his interest in making sure that things were secure in the conspiracy was key. And as soon as he realized it wasn't, he got out of there. Now, he got out of there and we are not tying him to the other parts in the conspiracy. There isn't any question about that. He withdrew and that's all he's responsible for. Okay, so when he withdrew, could he draw the diagram for me? He withdrew in September of 2000. Okay, is there a question? He withdrew very early. He withdrew in 2000. The conspiracy continued to 2003. There's no question that we are not holding him responsible. He was argued to the jury. He was not held responsible for what happened afterwards. So the evidence about what happened in   is not available. I mean, have you drawn a real conspiracy for me? All I saw was a spoke and a hug. He would have dropped out of the conspiracy in September of 2000. There were other people. But we don't know who they were. And that's an issue in the case. Clearly, the efforts to conceal Well, why not just charge him? I know it's the government's discretion, but why not just charge him with dealing with stolen property with that one party who was selling it to? Well, because the conspiracy was broader than that. The Nguyen's were continued to deal through 2003. Mr. Merck had reason to know that they were dealing with other people as evidenced by the FedEx records as also evidenced by the length of time. And in that regard, I would look to the Umagat case, not to the two rental car agents who were involved in one transaction who the court reasonably concluded did not have reason to know about a broader drug conspiracy. And that's the kind of case that I would look to the court to look at. And I would look to the court to look at the court to look at the court to look at the court to guess what happened there and how it played out, or what was going to happen to it, and how it played out, and what was tying him to knowledge about others involved. I would say the most direct evidence is the FedEx records with the nail salon. Now that does involve some inference about what else happened there. But of course, the government is entitled to all reasonable inferences in the analysis. Assume for the moment that there is a variance, then where do we go from there? You know what I was talking about   earlier? I think the Court has to look at the evidence of did he know it was stolen. Clearly, there was a lot of evidence that he was actually stealing it. So he knew that he was dealing in stolen property because he was taking it out of the finished goods                  that  was dealing with. And if you take Davis' testimony out, is there any likelihood that your client would not have been convicted? Well, there's no question. We had a tough row to hoe any way you cut it. But ultimately, the government made its job much easier. So I don't know what would have happened in that hypothetical case. We would have approached it very differently. By charging the way it did, it resulted in a structural error where our hands were tied. We had to concede that these parts were wrong. And the bare fact that they were given this instruction, there was some discussion at the end of the argument there by the government that, you know, look, the jury heard all of this and it made this decision. So you're saying that the prejudice that they didn't have Dave's testimony, what else could you have argued? Because he never contended that he didn't steal these things and the evidence of him stealing them and sending them was pretty strong. But the decision to make that concession was made after the district court ruled that all this stuff was coming in. And lawyers say this to me all the time. Judge, because you ruled this way, I was forced to do this. And I look at him and say, you know, you're just saying that because you can't tell me your guy would have really taken the stand because he's got all these convictions or whatever. And so what I'm asking you is would he have taken the stand? Would he have put on a different defense that you had available? Not just that, well, this is the strategic approach. Because if you were prejudiced, it means that you would have done something else that wouldn't have resulted in the same outcome. And so I think that the question is how     the government had properly charged the case. I think that the question is how would we have done this differently if the fact is it didn't properly charge the case, jury was instructed a certain way, and it didn't meet the test of the instructions. And I heard the government make a number of points about all these reasons that Mr. Merck should have been aware of some larger conspiracy. And I think   is how    done this differently if the government had instructed a certain way, and it didn't meet the test of the instructions. And I think instructions. And I think is
judges: Pregerson, Ikuta, Moskowitz